## THE STATE v. MITCHELL ET AL.

1. **Rape**: EVIDENCE TO ESTABLISH. Evidence considered, (see opinion,) and *held* sufficient to sustain a charge of rape as against one of the defendants, but insufficient as to the other.

2. ———: CORROBORATION: STATEMENTS OF PROSECUTRIX. The fact that the prosecutrix, soon after the alleged rape, complained that she had been abused and ravished, was admissible in corroboration of her evidence, though she did not testify till after such corroborative evidence had been given. *State v. Richards*, 33 Iowa, 420, distinguished.

3. ———: MINOR OFFENSES INCLUDED: INSTRUCTION: ERROR WITHOUT PREJUDICE. On a trial for rape, the court instructed the jury that the crime charged included the crime of an assault with intent to commit rape, and, also, a simple assault, and that the jury might find the defendants guilty of either. *Held* that the instruction was faulty in that it did not mention the crime of assault and battery; but that the error was cured by another instruction in which the question of assault and battery was substantially submitted to the jury.

4. ———: INSTRUCTIONS. Sundry instructions examined and *held* not vulnerable to objections urged against them.

*Appeal from Fayette District Court.*

THURSDAY, DECEMBER 17.

THE defendants were indicted for the crime of rape upon one Mary Stranahan. Verdict was rendered against them, and each was sentenced to imprisonment for ten years. They appeal to this court.

*Ainsworth & Hobson* and *D. W. Clements*, for appellants.

*A. J. Baker, Attorney-general*, for the State.

ADAMS, J.—I. The undisputed evidence shows that in November, 1882, the complainant and defendants attended a

1. RAPE : evidence to establish.

dance at a private house near Wadena, a mile or more from the complainant's home in Fayette county. She started home at four or five o'clock in the morning, riding in a wagon, at first with five others, but

some of these were left by the way before reaching Stranahan's. The wagon had no seats, and the members of the company sat on straw in the bottom of the box. The alleged rape, if committed, was committed by the defendant Mitchell on the way to the complainant's home in the wagon. At least three of the members of the company had left. When the complainant reached home there appears to have been but one person in the wagon with her. Three witnesses so testify, and neither the complainant nor any one else testified to the contrary. The complainant had been drinking some whisky on the way, but there is no direct evidence tending to show that she was under the influence of liquor. She was evidently under some excitement when she reached home. She got out of the wagon, went inside the front yard, sat down and commenced groaning. She did not appear, however, to have sustained any serious injury. Her parents heard the wagon arrive, and afterwards heard the complainant's groans. They were greatly alarmed, and went out as soon as possible. They both testify, in substance, that there was but one person with their daughter, and that that person was not the defendant Mitchell. But the undisputed evidence shows that if any one had sexual intercourse with the complainant it was Mitchell, and no one else. He testified that he was the one who drove home with complainant, and the one whom her parents saw with her when she arrived. What motive he could have had for committing perjury by swearing that he was the person who drove home with her if he was not the person it is impossible to conceive. The fact appears to be that the defendant Lockard accompanied the complainant to the dance. The parents probably assumed that he would return with her. They supposed that he was the person who did return with her. But it is easy to believe that in the darkness and excitement they were mistaken. As tending to show that they were, we have the positive testimony of one Mary Lamphire that she was one of the six persons who started homeward from the dance in the wagon, and

that when they were half a mile from Stranahan's she and defendant Lockard left the wagon and walked to her home, half a mile in another direction, and left Mitchell to drive with complainant to her home. Neither the complainant nor any one else testified that Lockard touched her, or offered to touch her, or rendered Mitchell any assistance. The most that complainant testified to is that Lockard was driving when Mitchell had intercourse with her. She testified, however, that the horses walked home, and it is possible that they did so without a driver, and that the complainant in her excitement failed to observe it, or failed to remember it. Mary Lamphire testified that soon after she and Lockard left the wagon, and when they had gone about forty rods toward her home, she heard the complainant "holler." The testimony of the complainant, if she is to be believed at all, shows that she was ravished in a few minutes after Mary Lamphire left her, and that at the time she was ravished she "hollered." We are led almost irresistibly to the conclusion that, if complainant was ravished, Lockard was not even present. So strongly are we of the opinion that Lockard is innocent, we have to say that we think that as to him the verdict should have been set aside for want of evidence.

II. As to Mitchell, the evidence is entirely different. We think that it justified the jury in finding him guilty. It is contended, to be sure, that the testimony of the complainant was not corroborated. But in our opinion it was. It was shown that the complainant arrived home with marks of violence upon her, and there was evidence to the effect that the man who was with her, who, according to Mitchell's own testimony, was himself, undertook to account for her injuries by stating that the team ran away, which statement, if made, it appears was false.

III. It is contended, however, that the court erred in the admission of testimony. The complainant's mother was allowed to testify, against the objection of the defendants, that the complainant, upon her

2. ——: corroboration: statements of prosecutrix.

arrival, made complaint that she had been abused and ravished. The objection urged is that the witness was allowed to give hearsay evidence of particulars. They rely upon *State v. Richards*, 33 Iowa, 420. In that case the court allowed evidence of the complainant's statement as to how she tried to get away from defendant and fell down, and as to some other particulars, but it was not held that the evidence should be limited to the fact that the complainant complained of being injured. If she stated that she had been ravished, the evidence might show the statement. The particularity might go to the extent of showing what injury she complained of. It is true that at that time the complainant had not been examined as a witness, and the rule seems to be that evidence of the fact that she made complaint is admissible only in corroboration of her testimony. But, conceding that evidence of her statement did not appear to be admissible at that time, we cannot see how the defendants were prejudiced. She afterwards testified.

IV. The court instructed the jury, in substance, that the crime of rape included the crime of an assault with intent to commit rape, and, also, a simple assault; and that the jury were called upon to decide whether the defendants were guilty of rape, or an assault with intent to commit rape, or a simple assault. When the crime charged necessarily includes crimes of a lower degree, of either of which, under the evidence, the jury might believe the defendant guilty, the court should instruct as to all those lower degrees of crime. *State v. Vinsant*, 49 Iowa, 241; *State v. Clemons*, 51 Id., 274. The defendants contend that the instruction was not full enough, in that it did not mention the crime of assault and battery. We cannot say that the instruction meets our unqualified approval. Strictly, a simple assault is an unlawful offer or attempt, with force or violence to do a corporal hurt to another, and falls short of what is denominated an assault and battery. Under the evidence, we do not think that the jury with any propriety could have found

3. RAPE: minor offenses included: instructions: error without prejudice.

that either of the defendants guilty of a simple assault. If the complainant was not to be believed to such an extent as to lay the foundation for any verdict against either defendant, the jury could not with any propriety, have found Mitchell guilty of less than assault and battery. Under the evidence he was guilty of at least that or nothing. But when we look at the instructions further we have to say that we do not think that there was any real ground for complaint. The court gave an instruction in these words. "If you do not find the defendant Mitchell guilty of rape, or of an assault with intent to commit rape you will next inquire whether the defendant was guilty of a simple assault upon her person. And, in order to convict said defendant in this offense, you must be satisfied from the evidence beyond a reasonable doubt that, on the night in question, he unlawfully and without her consent laid violent hands upon her." By this instruction the court defined a simple assault, as the term had been used by it, and this instruction became the law to the jury. The real issue, then, as to whether Mitchell was guilty of an assault and battery, was submitted.

V. The court gave an instruction in these words: "There is no evidence that the defendant Lockard personally, and with his own hand, assaulted Mary Stranahan, or that he himself ravished her. In order to find him guilty, therefore, it will be necessary for you to first find the defendant Mitchell guilty, and also find the defendant Lockard so connected with the guilty transaction as to make him equally guilty." The giving of this instruction is assigned as error. The complaint made of it is that it was prejudicial to Mitchell. His counsel say that "its natural effect would be to cause any juryman who might be satisfied of Lockard's guilt to vote for a conviction of Mitchell, (though not convinced of his guilt beyond a reasonable doubt,) for fear Lockard would escape punishment." But as Lockard did not touch the complainant he could not be guilty of rape unless he aided Mitchell in his commission of

the rape, and he certainly did not do that if Mitchell did not commit the rape.

VI. Some other errors are assigned which, in view of the length of this opinion, we must be allowed to dispose of in a brief way. In one instruction the court said: "It does not follow that you will be required to convict because there is some corroboration of her testimony *calculated* to connect said defendant with the crime." It is contended that the court should have used the word "tending" where it used the word "calculated." But we are unable to see that the use of the word "tending" would have been more favorable to the defendant.

VII. It is claimed that one instruction states the evidence incorrectly. We have read the instruction carefully in connection with the evidence, and have to say that we do not think that there is any substantial inaccuracy.

VIII. The court in an instruction used the word "ravish" where it is claimed that it should have used the words "ravish and carnally know." It may be conceded that the word "ravish" is susceptible of a different meaning from the words "ravish and carnally know." But the connection in which the word "ravish" was used was such that we think that the jury could not have been misled.

We have examined the entire record, and see no error except as above pointed out. We think that as to the defendant Lockard the judgment should be reversed, and as to the defendant Mitchell, affirmed.